EXHIBIT A

## LETTER OF REQUEST
## COMMISSION ROGATOIRE
## WNIOSEK O PRZEPROWADZENIE DOWODU

Hague Convention of 18 March 1970 on the
**Taking of Evidence Abroad in Civil or Commercial Matters**
Convention De La Haye du 18 mars 1970 sur
l'obtention des preuves à l'étranger en matière civile ou commerciale
*Konwencja sporządzona w Hadze dnia 18 marca 1970 r.*
*o przeprowadzaniu dowodów za granicą w sprawach cywilnych lub handlowych*

| 1. | **Sender**<br>Expéditeur<br>*Nadawca* | Sąd Okręgowy w Gdańsku IX Wydział Gospodarczy<br>ul. 3 Maja 9A, 80-802 Gdańsk, Polska<br>IX GC 164/20, Adm. 542-468/21-Oz |
|----|----|----|
| 2. | **Central Authority of the Requested State**<br>Autorité centrale de l'État requis<br>*Organ centralny państwa wezwanego* | Department of Justice of United States Civil Division, Office of the International Judicial Assistance, P.O. Box 14330, Washington D.C. 20004, United States of America |
| 3. | **Person to whom the executed request is to be returned**<br>Personne à qui les pièces constatant l'exécution de la demande doivent être renvoyées<br>*Osoba, do której wykonany wniosek ma zostać odesłany* | Sąd Okręgowy w Gdańsku IX Wydział Gospodarczy<br>ul. 3 Maja 9A, 80-802 Gdańsk, Polska,<br>IX GC 164/20. Adm.542-468/21-Oz |
| 4. | **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**<br>Indiquer la date limite à laquelle l'autorité requérante désire recevoir la réponse à la commission rogatoire<br>*Sprecyzowanie terminu, do którego organ wzywający oczekuje otrzymania odpowiedzi na wniosek* | |
| | **Date**<br>Date limite<br>*Termin* | - |
| | **Reason for urgency***<br>Raison de l'urgence<br>*Uzasadnienie pilności* | - |

In conformity with Article 3 of the Convention, the undersigned applicant has the honour to submit the following request:
En conformité de l'article 3 de la Convention, le requérant soussigné a l'honneur de présenter la demande suivante :
*Zgodnie z artykułem 3 Konwencji, niżej podpisany wnioskodawca ma zaszczyt przedłożyć następujący wniosek:*

| 5. a | **Requesting authority (Art. 3(a))**<br>Autorité requérante (art. 3(a))<br>*Organ wzywający (Art. 3(a))* | Sąd Okręgowy w Gdańsku IX Wydział Gospodarczy<br>ul. 3 Maja 9A, 80-802 Gdańsk, Polska<br>IX GC 639/17, Adm. 542-2646/17-Oz<br>wydzial09@gdansk.so.gov.pl<br>0048 58 3242830<br>0048 58 3242837 |
|----|----|----|
| b | **To the Competent Authority of (Art. 3(a))**<br>À l'Autorité compétente de (art. 3(a))<br>*Do Właściwego Organu w (Art. 3(a))* | Department of Justice of United States Civil Division, Office of the International Judicial Assistance, P.O. Box 14360, Washington D.C. 20004, United States of America |
| c | **Names of the case and any identifying number**<br>Nom de l'affaire et numéro d'identification de l'affaire<br>*Nazwa sprawy i sygnatura akt* | IX GC 164/20 , Adm. 542-468/21-Oz |
| 6. | **Names and addresses of the parties and their representatives (including representatives in** | |

| | | the Requested State*) (Art. 3(b))<br>Identité et adresse des parties et de leurs représentants (y compris représentants dans l'État requis) (art. 3(b))<br>*Imiona i nazwiska oraz adresy stron i ich pełnomocników (łącznie z pełnomocnikami w państwie wezwanym) (Art. 3(b))* |
|---|---|---|
| a | **Plaintiff**<br>Demandeur<br>*Powód* | KBP -2 Spółka z ograniczoną odpowiedzialnością w Zabierzowie , Polska<br><br>KBP -3 Spółka z ograniczoną odpowiedzialnością w Zabierzowie, Polska<br><br>KBP -5 Spółka z ograniczoną odpowiedzialnością w Zabierzowie, Polska<br><br>KBP -6 Spółka z ograniczoną odpowiedzialnością w Zabierzowie, Polska |
| | **Representatives**<br>Représentants<br>*Pełnomocnicy* | Adw. Jakub Urbanowicz,<br><br>Sołtysiński Kawecki&Szlęzak - Kancelaria Radców Prawnych i Adwokatów Sp.k.<br><br>Ul. Jasna 26, 00-054 Warszawa, Polska |
| b | **Defendant**<br>Défendeur<br>*Pozwany* | Conection spółka z ograniczoną odpowiedzialnością w Redzie, Polska |
| | **Representatives**<br>Représentants<br>*Pełnomocnicy* | r.pr. Marek Chmaj,<br><br>Chmaj i Wspólnicy sp.k.,<br><br>Ul. Flory 9 lok. 4, 00-586 Warszawa, Polska |
| c | **Other parties**<br>Autres parties<br>*Inne podmioty biorące udział w postępowaniu* | - |
| | **Representatives**<br>Représentants<br>*Pełnomocnicy* | - |

| 7. a | **Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Art. 3(c))**<br>Nature et objet de l'instance (divorce, filiation, rupture de contrat, responsabilité du fait des produits, etc.) (art. 3(c))<br>*Przedmiot postępowania (rozwód, ojcostwo, niewykonanie umowy, odpowiedzialność za produkt, itp.) (Art. 3(c))* | o ustalenie nieistnienia, ewentualnie nieważności umów ( aneksów)<br>Of non-existence, alternatively invalid of contracts (annexes) |
|---|---|---|
| b | **Summary of complaint**<br>Exposé sommaire de la demande<br>*Podsumowanie żadania pozwu/wniosku* | Stan faktyczny w załączeniu<br><br>Facts of the Case |
| c | **Summary of defence and counterclaim***<br>Exposé sommaire de la défense ou demande reconventionnelle<br>*Podsumowanie stanowiska pozwanego i powództwa wzajemnego* | Stan faktyczny w załączeniu<br><br>Facts of the Case |
| d | **Other necessary information or documents***<br>Autres renseignements ou | *Stan faktyczny* |

| | documents Utiles<br>*Inne niezbędne informacje lub dokumenty* | *Facts of the Case*<br><br>*Lista pytań do świadka Bożeny Saneckiej*<br><br>*List of questions to the witness, Bożena Sanecka*<br><br>Lista pytań do świadka Cathleen M. Meegan<br><br>List of the questions to the witness, Cathleen M. Meegan |
|---|---|---|
| **8. a** | **Evidence to be obtained or other judicial act to be performed (Art. 3(d))**<br>Actes d'instruction ou autres actes judiciaires à accomplir (art. 3(d))<br>*Dowód, który ma być przeprowadzony lub inne czynności sądowe, które mają być dokonane (Art. 3(d))* | dowód z zeznań świadków : Bożeny Saneckiej i Cathleen M. Meegan<br>Evidence statements of witnesses Bożena Sanecka and Cathleen M. Meegan |
| **b** | **Purpose of the evidence or judicial act sought**<br>But des actes a accomplir<br>*Cel wnioskowanego dowodu lub czynności sądowej* | Celem dowodu z zeznań świadków jest wykazanie okoliczności spornych między stronami procesu.<br><br>The purpose of taking witnesses' statements is to clarify the circumstances of dispute between the parties to the process. |
| **9.** | **Identity and address of any person to be examined (Art. 3(e))\***<br>Identité et adresse des personnes à entendre (art. 3(e))<br>*Dane i adres każdej osoby, która ma być przesłuchana (Art. 3(e))* | 1.Bożena Sanecka, 4532 North Nottingham. Norridge, IL 60607, USA,<br><br>2.Cathleen M. Meegan, 5400 South Neenah Avenue, Chicago, IL 60638, USA |
| **10.** | **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Art. 3(f))\***<br>Questions à poser ou faits sur lesquels les personnes susvisées doivent être entendues (art. 3(f))<br>*Pytania, które mają być zadane osobom przesłuchiwanym lub opis przedmiotu sprawy, w której mają być one przesłuchane (Art. 3(f))* | Stan faktyczny w załączeniu<br>Facts of the Case<br><br>Lista pytań do świadka Bożeny Saneckiej<br>List of questions to the witness, Bożena Sanecka<br><br>Lista pytań do świadka Cathleen M. Meegan<br>List of questions to the witness, Cathleen M. Meegan |
| **11.** | **Documents or other property to be inspected (Art. 3(g))\***<br>Documents ou objets à examiner (art. 3(g))<br>*Dokumenty lub inne przedmioty, które powinny być zbadane (Art. 3(g))* | - |
| **12.** | **Any requirement that the evidence be given on oath or affirmation and any** | Po uprzedzeniu o odpowiedzialności karnej za złożenie fałszywych zeznań i po odebraniu od świadka przysięgi . |

| | | |
|---|---|---|
| | special form to be used (Art. 3(h))* <br> Demande de recevoir la déposition sous serment ou avec affirmation et, le cas échéant, indication de la formule à utiliser (art. 3(h)) <br> *Wymóg, aby zeznania zostały stwierdzone przysięgą lub przyrzeczeniem wraz z zastosowaniem szczególnej formy tej przysięgi lub przyrzeczenia (Art. 3(h))* | First, the witnesses need to be cautioned of criminal liability for providing false testimony and taken an oath from. |
| 13. | Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Arts 3(i) and 9)* <br> Formes spéciales demandées (déposition orale ou écrite, procès-verbal sommaire ou intégral, "cross-examination", etc.) (art. 3(i) et 9) <br> *Szczególne metody lub procedura, których należy przestrzegać (np. ustna lub pisemna, dosłowna transkrypcja lub streszczenie, przesłuchanie „krzyżowe" itp.) (Art. 3(i) oraz 9)* | - |
| 14. | Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Art. 7)* <br> Demande de notification de la date et du lieu de l'exécution de la requête, de l'identité et de l'adresse de la ou des personnes à informer (art. 7) <br> *Prośba o zawiadomienie o czasie i miejscu przeprowadzenia postępowania oraz dane i adres osoby, która ma być zawiadomiona (Art. 7)* | Pełnomocnik powoda adw. Jakub Urbanowicz, <br><br> Sołtysiński Kawecki&Szlęzak - Kancelaria Radców Prawnych i Adwokatów Sp.k. <br><br> Ul. Jasna 26, 00-054 Warszawa, Polska <br><br> pełnomocnik pozwanego r.pr. Marek Chmaj, Chmaj i Wspólnicy sp.k., Ul. Flory 9 lok. 4, 00-586 Warszawa, Polska <br><br> Obecność pełnomocników i stron nie jest konieczna przy wykonaniu wniosku. <br> The parties' attorneys and the parties themselves need not be present at execution of the request. |
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Art. 8)* <br> Demande d'assistance ou de participation des magistrats de l'autorité requérante à l'exécution de la commission rogatoire (art. 8) <br> *Prośba o obecność lub udział sędziów organu wzywającego przy wykonywaniu wniosku (Art. 8)* | - |
| 16. | Specification of privilege or | Zgodnie z art. 261 § 1 Kodeksu postępowania cywilnego, nikt |

| | | |
|---|---|---|
| | **duty to refuse to give evidence under the law of the Requesting State (Art. 11(b))\*** *Spécification des dispenses ou interdictions de déposer prévues par la loi de l'État requérant (art. 11(b))* *Sprecyzowanie prawa lub obowiązku odmowy zeznań lub przedstawienia innego dowodu na podstawie prawa państwa wzywającego (Art. 11(b))* | nie ma prawa odmówić zeznań w charakterze świadka, z wyjątkiem małżonków stron, ich wstępnych, zstępnych i rodzeństwa oraz powinowatych w tej samej linii lub stopniu, jak również osób pozostających ze stronami w stosunku przysposobienia. Prawo odmowy zeznań trwa po ustaniu małżeństwa lub rozwiązaniu stosunku przysposobienia. Jednakże odmowa zeznań nie jest dopuszczalna w sprawach o prawa stanu, z wyjątkiem spraw o rozwód.<br><br>§ 2. Świadek może odmówić odpowiedzi na zadane mu pytanie, jeżeli zeznanie mogłoby narazić jego lub jego bliskich, wymienionych w paragrafie poprzedzającym, na odpowiedzialność karną, hańbę lub dotkliwą i bezpośrednią szkodę majątkową albo jeżeli zeznanie miałoby być połączone z pogwałceniem istotnej tajemnicy zawodowej. Duchowny może odmówić zeznań co do faktów powierzonych mu na spowiedzi.<br><br>Pursuant to section 261(1) of the Code of Civil Procedure, no one enjoys the right to refuse testifying in the capacity of a witness, except for the spouses of the parties, their descendants and ascendants, brothers and sisters, and relatives of the same line or degree, plus persons in step relationship with the parties. The right to refuse to testify continues after the cease of marriage or termination of adoption. Yet, refusal to testify is non-admissible in cases concerning marital status rights, except for divorce cases.<br>(2). The witness can refuse answering a question asked, if the testimony could expose himself/herself or his/her next of kin listed in the previous paragraph to criminal liability, disgrace, or severe direct financial loss, or if the testimony would involve violation of vital professional secrecy. A clergyman can refuse to testify about any facts disclosed to him in confession. |
| **17.** | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:\*** *Les taxes et frais donnant lieu à remboursement en vertu de l'article 14, alinéa 2 et de l'article 26 seront réglés par :* *Opłaty lub koszty, które podlegają zwrotowi na podstawie paragrafu drugiego Artykułu 14 lub na podstawie Artykułu 26 Konwencji zostaną poniesione przez:* | Sąd Okręgowy w Gdańsku IX Wydział Gospodarczy ul. 3 Maja 9A, 80-802 Gdańsk, Polska |

| | |
|---|---|
| **Date of request** *Date de la requête* *Data wniosku* | 30.03.2021 r. |
| **Signature and seal of the requesting authority** *Signature et sceau de l'autorité requérante* *Podpis i pieczęć organu wzywającego* | SĘDZIA Sądu Okręgowego w Gdańsku *Mariusz Nowicki* |

Ewa Nanowska
Sworn translator and interpreter
of the English language
80-153 Gdańsk, ul. Plowce 34
tel. 58 302 08 27

*TRANSLATED FROM THE POLISH LANGUAGE*

**Case ref. IX GC 164/20**

## Facts of the Case

The Claimants, KBP-2 Spółka z ograniczoną odpowiedzialnością in Zabierzów (hereinafter: KBP-2), KBP-3 Spółka z ograniczoną odpowiedzialnością in Zabierzów (hereinafter: KBP-3), KBP-5 Spółka z ograniczoną odpowiedzialnością in Zabierzów (hereinafter: KBP-5), and KBP-6 Spółka z ograniczoną odpowiedzialnością in Zabierzów (hereinafter: KBP-6) have filed a petition for a declaratory judgment against Conection Spółka z ograniczoną odpowiedzialnością in Reda requesting declaration of non-existence, alternatively invalidity of four annexes to four contracts, namely those of December 18, 2006 and May 8, 2006, plus two contracts of April 30, 2009, all of which concerned the management of real estates located in Rząska, commune of Zabierzów, owned by the Claimants, where the said annexes were allegedly signed on January 3, 2013, and March 1, 2013.

The annexes stipulated that the contracts could only be terminated on mutual agreement between the parties, and in the event the Claimants terminated the contracts without written consent from the Respondent, the Claimants were obliged to pay compensation. The annexes in dispute further empowered the Respondent to deprive the Claimants of power supply, should they be in default of paying the amounts stipulated therein.

The Claimants argue that the above annexes represent non-existent legal transactions, as they were not signed by Bożena Sanecka, member of the management boards, on the dates specified in the annexes but at the time when the person no longer held the function and could not represent the Claimants. Noteworthy, they point to a relationship between the person and Adam Świech whose orders, the Prosecution asserts, were followed by Bożena Sanecka who e.g. forged documents. The Claimants hold that the respondent Company, just as Conection Neruchomości, is actually controlled by Adam Świech, and that his wife and daughter sit on the management boards are shareholders in the Respondent alongside Derek Lewicki who, as the Prosecution asserts, was a member of an international criminal group headed by Adam Świech.

The Claimants say that the annexes in dispute were intended to restrict admissibility of termination of the management contracts between the parties until the end of the year 2020 by introducing the Claimants' obligation to pay compensation in the event of termination on their side, and also by entitling the Respondent to cease supplying power to the above-indicated buildings in the event the compensation was not paid.

Moreover, the Claimants claim that in order to force the payment of the amounts in dispute, some subjects acting on order from the Respondent damaged the power supply infrastructure owned by the Respondent himself in order to deprive the Claimant Companies of power supply.

Should the arguments for declaring the disputed annexes non-existent not be granted, the Claimants are of the view that they should be declared absolutely invalid, as they were backdated at the time when Bożena Sanecka was no longer a member of the management boards of the Claimant Companies; hence, she was not empowered to sign the documents in the name of the Claimant Companies. The Claimants further point out that they deny the signing of the said annexes in their names.

The Respondent has requested dismissal of the claim in its entirety.

As the Respondent sees it, the validity of the annexes is not dependent on whether the current management boards of the Claimant Companies accept them or whether they intend to satisfy the obligations formulated therein.

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
30-153 Gdańsk, ul. Płowce 34
tel. 58 302 08 27

*TRANSLATED FROM THE POLISH LANGUAGE*

The Respondent claims that the said annexes came as the result of the parties' consensus reached in the matter of repayment of the Claimants' overdue fees owing to the Respondent under the building management contracts, amounting to ca PLN 1,500,000.00. The Respondent has admitted that the guarantees ensuing from the text of the annexes were actually intended to compensate the Respondent for a concession on his side, made to the Claimants, consisting in his waiving forced and immediate enforcement of the overdue debt plus interest, and its deferment in time plus partial cancelation, which enabled the Claimants to remain liquid and solvent. The Respondent points out that to compensate for the delay in the payment of the immense amount owing to the Respondent for his proper performance of the building management contracts, the Claimants agreed to guarantee continued validity of the contracts to the Respondent over the period from 2013 to 2020.

Saying that, the Respondent further denies that Adam Świech allegedly organized the operations of the KBP complex in such a way as to have their business controlled by the entities he is related to, the Respondent included.

The Respondent argues that the Claimants' overdue debt owing for the management of the buildings stood at ca PLN 3,500,000.00 in the year 2011 when the Respondent agreed to partial cancelation of the debt. The debt for the power supplies and management of the buildings for the year 2013, on the other hand, added up to ca PLN 1,500,000.00, in effect of which the said annexes were signed.

The Respondent raises the charge that the Claimant Companies have not proved not being indebted, and not having the payment deadlines postponed. The Respondent sees the fact as the Claimants' admission of their making untimely payments of the fees under the building management contracts and of the electricity bills.

The Respondent argues that Bożena Sanecka remained a full member of the management board of the Claimant Companies until May 21, 2013; hence the said annexes had been signed before the date she was dismissed from her function of a management board member.

The Respondent denies having acted so as to force the Claimants to pay the dues stemming from the annexes and to that effect having some subjects act on his order and damage the infrastructure owned by the Respondent so as to deprive the Claimant Companies of power supply.

The Respondent asserts that when entering into the said annexes he acted in trust of the entries disclosed in the National Court Register which corroborated the powers of Bożena Sanecka to represent the Claimants. In the view of the Respondent, in order that the annexes can be declared in conflicted with the principles of social coexistence it is not sufficient to claim that their purpose was to hinder termination of the management contracts, since that purpose is obvious and fully recognized in the law and principles of social co-existence.

*[stamp and signature:]*
JUDGE
of the Regional Court in Gdańsk
/-/ illegible signature
*Mariusz Nowicki*

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*Ewa Nanowska*
Sworn translator and interprete
of the English languag
80-153 Gdańsk, ul. Piwrca 3⁴
tel. 58 302 08 2?

*TRANSLATED FROM THE POLISH LANGUAGE*

### List of questions to the witness, Bożena Sanecka

1. Have you ever sat on the management boards of the following companies: KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

2. If so, over what period of time?

3. Did anyone challenge your employment contract at the time you held the function of a member of the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

4. Did anyone, the shareholders in particular, challenge reasonableness of the decisions you made and the obligations you assumed at the time you held the function of a member of the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

5. What were your duties as a member of the management boards of the above-listed companies?

6. Did the companies own any real estate?

7. Was management of the real estates owned by the said companies entrusted to Conection Sp. z o.o.?

8. What was the main cause of the signing of the annexes to the management contracts with Conection Sp. z o.o. by KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

9. On what dates did you sign the annexes to the management contracts with Conection Sp. z o.o.?

10. Was there, on January 3, 2013 and March 1, 2013, any overdue debt of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. owing to Conection Sp. z o.o. under the building management contracts?

11. If so, what was the amount of the overdue debt of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. on the date the annexes were signed?

12. Did Conection Sp. z o.o. waive immediate forced enforcement of the debt from KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

13. Did Conection Sp. z o.o. defer the payment of the overdue debt?

14. If so, for how long?

*Ewa Nanowska*
*ENc*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*TRANSLATED FROM THE POLISH LANGUAGE*

15. Did Conection Sp. z o.o. cancel a part of the debt owing under the building management contracts from KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

16. Has the effectiveness or validity of the annexes you signed on January 3, 2013 and March 1, 2013 ever been questioned in any proceedings?

17. Have KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. ever raised any claims against you in connection with the function you held and the actions you took?

18. Have any legal charges ever been formally raised against you alleging your dishonest representation of and dealing with the matters of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

---

*Ewa Nanowska*

Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*I, the undersigned, Ewa Nanowska, Sworn Translator appointed by and registered with the Polish Ministry of Justice under No. TP/36/05, do hereby certify that to the best of my knowledge the foregoing is a true and accurate translation of the original/_____ document in Polish presented to me. In witness whereof I have hereunto set my hand and seal of office this 14. day of March 2021.*

Filed under No 153 / 2021 in Sworn Translator's Register

Charged PLN 135.33 + VAT
*Legal basis of the fee rate: Regulation of the Minister of Justice of 8 October 2019 (Journal of Laws 2019: it. 1975) amending the Regulation on the certified translator's fees for services based on the Act on the Profession of a Certified Translator of 15 November 2004, section 16(2) (JoL 2019: it. 1326)*

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
80-153 Gdańsk, ul. Plowce St.
tel. 58 302 08 27

*TRANSLATED FROM THE POLISH LANGUAGE*

List of questions to the witness, Bożena Sanecka:

1. Are you a member of Adam Świech's family? Who are you for Adam Świech?

2. Do you know Derek Lewicki?

3. Who is Derek Lewicki and how did you meet him?

4. Did Derek Lewicki contact you in 2013?

5. Do you know who made the decision to appoint you a member of the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

6. Who put forward the proposal of appointing you member of the companies' management boards and how did he/she substantiate it?

7. What did you do on the management board of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.? What was the scope of your duties?

8. In your affidavit of February 16, 2016, you stated that you had been appointed member of the management boards of the above companies because, *as I understood it, I was asked to sit on the management boards since one could anticipate I would be obeying orders without asking questions or raising objections [...].* Is that true?

9. What did you do before your appointment to the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., KBP-6 Sp. z o.o., and other KBP companies?

10. What was your occupation before your appointment to the management boards of the above companies?

11. Had you dealt with managing companies before you were appointed a management board member of the said companies? Did you have any experience in this respect?

12. Did you live in Poland over the time you sat on the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.? Where did you live at the time?

13. In your affidavit of February 16, 2016, you stated that *at no time over my term of office on the management boards of the KBP entities did I negotiate any contracts for any of the KBP entities, nor did I play any other active role in the management of the companies or management of their affairs. The sole duty I performed consisted in signing documents [...].* Is this true?

14. Did you sign the following documents:

    (i) annexe to the contract of December 18, 2006, on the management of the KBP-200 building, signed by and between KBP-2 sp. z o.o. and Conection sp. z o.o., dated January 3, 2013;

    (ii) annexe to the contract of May 8, 2006, on the management of the KBP-400 building, signed by and between KBP-3 sp. z o.o. and Conection sp. z o.o., dated January 3, 2013;

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
80-153 Gdańsk, ul. Płowiecka
tel. 58 302 08 27

*TRANSLATED FROM THE POLISH LANGUAGE*

      (iii)    annexe to the contract of April 30, 2009, on the management of the KBP-800 building, signed by and between KBP-5 sp. z o.o. and Conection sp. z o.o., dated March 1, 2013;

      (iv)    annexe to the contract of April 30, 2009, on the management of the KBP-1000 building, signed by and between KBP-6 sp. z o.o. and Conection sp. z o.o., dated March 1, 2013?

15.  Why, in your affidavit of February 16, 2016, did you indicate that you might have signed two of the above annexes on dates other than those stated in the documents?

16.  In your affidavit of February 16, 2016, you stated that: *The dates on which I signed documents were different from the dates printed thereon. Although I cannot remember the dates on which I actually signed individual documents, including those enclosed as Exhibits 1-23* [including two of the above-listed annexes to the management contracts – note from the Claimants' attorney], *I signed many of them later than on April 11, 2013, others after May 20, 2013.* Can you explain what the purpose of signing the documents on dates other than shown on the documents was?

17.  What was the procedure of your signing documents in the name of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. considering you yourself lived in the USA?

18.  Did you yourself produce the documents you then signed (contracts, annexes, declarations, bills of exchange, etc.)?

19.  Who did you receive the documents from?

20.  Did Derek Lewicki forward any documents to be signed to you? What were the documents?

21.  Do you know who drafted the documents?

22.  Did you amend the draft documents in any way?

23.  Did you contact Cathleen M. Meegan, Notary Public, to notarize the documents?

24.  How did you meet Cathleen M. Meegan, Notary Public?

25.  What were the relationships between you?

26.  Did Cathleen M. Meegan, Notary Public, put the actual notarization date on the documents she authenticated? Or would she, perhaps, also give other dates?

27.  Did you ask Cathleen M. Meegan, Notary Public, to indicate the notarization date that would be different from the date on which the documents were actually notarized?

28.  Why, in your affidavit of February 16, 2016, did you state that: *On my request, Ms Meegan would date her notarizations consistent with the dates printed on the documents instead of the dates on which I actually signed them. The documents were not signed on the dates shown on the notarizations by Ms Meegan* [...]? Is this true?

29.  Are you aware of the purpose of signing the annexes to the management contracts?

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*TRANSLATED FROM THE POLISH LANGUAGE*

30. Why did the annexes extend the management contract validity terms until the year 2020?

31. Why did the annexes provide for the option of disconnecting the office buildings of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. from power supply?

32. Why did the annexes provide for compensation, should the management contracts be terminated? What was the purpose of the stipulations?

33. Do you know what the debt of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. to Conection sp. z o.o. was as at January 3, 2013 and March 3, 2013 (the dates shown on the annexes)?

34. Why do the annexes concluded by KBP-2 sp. z o.o. and KBP-3 sp. z o.o. with Conection sp. z o.o. not state the amount of the companies' debt to Conection sp. z o.o.?

35. Why do the annexes concluded by KBP-5 sp. z o.o. and KBP-6 sp. z o.o. with Conection sp. z o.o. state untrue amount of the companies' debt to Conection sp. z o.o.?

---

Ewa Nanowska

Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*I, the undersigned, Ewa Nanowska, Sworn Translator appointed by and registered with the Polish Ministry of Justice under No. TP/36/05, do hereby certify that to the best of my knowledge the foregoing is a true and accurate translation of the original/ _____ document in Polish presented to me. In witness whereof I have hereunto set my hand and seal of office this 14. day of _____ March _____ 2021.*

Filed under No 154 / 2021 _____ in Sworn Translator's Register

Charged PLN 270.66 + VAT
*Legal basis of the fee rate: Regulation of the Minister of Justice of 8 October 2019 (Journal of Laws 2019: it. 1975) amending the Regulation on the certified translator's fees for services based on the Act on the Profession of a Certified Translator of 15 November 2004, section 16(2) (JoL 2019: it. 1326)*

Ewa Nano...
Sworn translator and interpre...
of the English langua...
80-153 Gdańsk, ul. Płowa...
tel. 58 302 08 ?

*TRANSLATED FROM THE POLISH LANGUAGE*

List of questions to the witness, Cathleen M. Meegan

1. Do you know Ms Bożena Sanecka?

2. How did you meet her?

3. What were your relationships?

4. Do you still keep in touch?

5. Did you notarize any documents on request from Bożena Sanecka?

6. Do you remember what documents they were?

7. Did Bożena Sanecka explain to you what the documents were and what purpose they were intended to serve?

8. Did the dates you put under your notarization clauses correspond with the actual notarization dates?

9. Did Bożena Sanecka ask you to put the notarization date which would be different from the date the documents were actually presented to you?

10. In your depositions given on July 2, 2018, in the criminal proceedings held by the Regional Prosecutor's Office in Kraków, case ref. PK IV WZ Ds. 19.2018, you stated the following: *Yest, I uphold my deposition of point five* [of the statement dated August 22, 2016, given in the case ref. 08 CV 4922 – note from the Claimants' attorney], *namely that when Bożena Sanecka asked me to state the notarization date being identical with the date printed in the premises of the document I notarized the document under that date, irrespective of when the document was signed. I cannot remember whether Bożena asked me to do so each and every time. Nevertheless, whenever she asked me, I complied* […]. Do you continue to uphold that on request from Bożena Sanecka you dated your notarization clause giving a date different from the actual notarization date?

---

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*I, the undersigned, Ewa Nanowska, Sworn Translator appointed by and registered with the Polish Ministry of Justice under No. TP/36/05, do hereby certify that to the best of my knowledge the foregoing is a true and accurate translation of the original _____ document in Polish presented to me. In witness whereof I have hereunto set my hand and seal of office this ___14___ day of _____March_____, 2021.*

Filed under No ___155/2021___ *in Sworn Translator's Register*

Charged PLN ___90.22 + VAT___
*Legal basis of the fee rate: Regulation of the Minister of Justice of 8 October 2019 (Journal of Laws 2019: it. 1975) amending the Regulation on the certified translator's fees for services based on the Act on the Profession of a Certified Translator of 15 November 2004, section 16(2) (JoL 2019: it. 1326)*



Ewa Nanowska
Sworn translator and interpreter
of the English language,
80-153 Gdańsk, ul. Plowce...
tel. 58 302 03 27

*TRANSLATED FROM THE POLISH LANGUAGE*

### List of questions to the witness, Cathleen M. Megan

1. What is your occupation?

2. Did you serve as a Notary Public in the State of Illinois, USA, in the year 2013?

3. Do you know Ms Bożena Sanecka?

4. Did you provide services or perform official actions for Ms Bożena Sanecka?

5. If so, when did you perform them, and what did they concern?

6. Did you authenticate signatures on documents on request from Ms Bożena Sanecka back in the year 2013 in the capacity of a Notary Public in Illinois, USA?

7. If so, do you remember what documents they were?

8. Do you remember the content of the documents?

9. If so, could you describe the documents in detail?

10. What is the procedure of authenticating signatures on documents in the USA?

11. Is there an act of law which regulates the procedure of authenticating signatures on documents?

12. What part of a document does notarization cover?

13. Does a Notary Public study the document featuring the signature he/she authenticates?

14. Was the authentication of the signatures featuring on documents on request from Ms Bożena Sanecka scarred with any irregularities?

15. Are you aware of any judicial proceedings which would be closed with the verdict that the documents you notarized for Ms Bożena Sanecka were authenticated incorrectly?

---

*Ewa Nanowska*
Sworn translator and interpreter
of the English language
lic. No. TP/36/05

*I, the undersigned, Ewa Nanowska, Sworn Translator appointed by and registered with the Polish Ministry of Justice under No. TP/36/05, do hereby certify that to the best of my knowledge the foregoing is a true and accurate translation of the original/_____ document in Polish presented to me. In witness whereof I have hereunto set my hand and seal of office this 14 day of _____March_____,2021.*

Filed under No  156 / 2021  in Sworn Translator's Register

Charged PLN  90. 22 + VAT
*Legal basis of the fee rate: Regulation of the Minister of Justice of 8 October 2019 (Journal of Laws 2019: it. 1975) amending the Regulation on the certified translator's fees for services based on the Act on the Profession of a Certified Translator of 15 November 2004, section 16(2) (JoL 2019: it. 1326)*

**Sygn. akt IX GC 164/20**

## Stan sprawy

Powodowie – KBP-2 Spółka z ograniczoną odpowiedzialnością w Zabierzowie (dalej jako: KBP-2), KBP-3 Spółka z ograniczoną odpowiedzialnością w Zabierzowie (dalej jako: KBP-3), KBP-5 Spółka z ograniczoną odpowiedzialnością w Zabierzowie (dalej jako: KBP-5) i KBP-6 Spółka z ograniczoną odpowiedzialnością w Zabierzowie (dalej jako: KBP-6) wnieśli przeciwko Conection Spółce z ograniczoną odpowiedzialnością w Redzie pozew o ustalenie nieistnienia, ewentualnie stwierdzenie nieważności czterech aneksów do czterech umów – z dnia 18 grudnia 2006 roku, 08 maja 2006 roku i dwóch z dnia 30 kwietnia 2009 roku, w przedmiocie zarządzania nieruchomościami, położonymi w miejscowości Rząska, gmina Zabierzów, stanowiącymi własność powodów, które to aneksy miały być rzekomo zawarte w dniu 03 stycznia 2013 roku i 01 marca 2013 roku.

Aneksy te przewidywały, że umowy mogą zostać rozwiązane tylko i wyłącznie za obopólnym porozumieniem stron, zaś w przypadku rozwiązania umów przez powodów bez pisemnej zgody pozwanego, powodowie obowiązani byli do zapłaty rekompensaty finansowej. Sporne aneksy przewidywały również uprawnienie pozwanego do pozbawienia powodów dostaw energii elektrycznej w braku płatności określonych w nich kwot.

Powodowie twierdzą, że powyższe aneksy stanowią czynności prawne nieistniejące, gdyż nie zostały podpisane w datach wskazanych w tych aneksach, przez członka zarządu Bożenę Sanecką, lecz w czasie, kiedy ta osoba już tej funkcji nie pełniła i nie mogła reprezentować powodów. Wskazują przy tym na powiązanie tej osoby z Adamem Świechem, na polecenie którego, zgodnie z twierdzeniami Prokuratury, Bożena Sanecka wykonywała polecenia m.in. w zakresie fałszowania dokumentów. Powodowie wskazali, że pozwana Spółka, jak i Conection Nieruchomości są faktycznie kontrolowane przez Adama Świecha, przy czym członkami zarządu jest jego żona i córka, które to osoby są również wspólnikami pozwanego, razem z Derekiem Lewickim, który według Prokuratury był członkiem międzynarodowej grupy przestępczej kierowanej przez Adama Świecha.

Zdaniem powodów sporne aneksy miały istotnie ograniczyć dopuszczalność wypowiedzenia łączących strony umów o zarządzanie w okresie do końca 2020 roku, wprowadzając zobowiązanie powodów do zapłaty rekompensaty na wypadek wypowiedzenia umowy, a ponadto uprawniać pozwanego do zaprzestania dostarczania energii elektrycznej do wyżej wskazanych budynków w przypadku braku płatności rekompensaty.

Powodowie podnoszą ponadto, że celem wymuszenia zapłaty spornych należności, osoby działające na zlecenie pozwanego dokonały uszkodzenia infrastruktury elektrycznej należącej do samego pozwanego, po to, aby pozbawić powodowe Spółki dostaw prądu.

W razie niepodzielenia argumentacji co do uznania spornych aneksów za nieistniejące, w ocenie powodów powinny one zostać uznane za

1

bezwzględnie nieważne, gdyż zostały podpisane z datą wsteczną, w czasie, w którym Bożena Sanecka nie była już członkiem zarządu powodowych Spółek, a zatem nie była uprawniona do podpisywania tych dokumentów w imieniu powodowych Spółek. Powodowie wskazują przy tym, że odmówili potwierdzenia zawarcia w ich imieniu przedmiotowych aneksów.

Pozwany wniósł o oddalenie powództwa w całości.

W ocenie pozwanego ważność aneksów nie zależy od tego, czy obecnie funkcjonujące zarządy powodowych Spółek wyrażają dla nie akceptację lub czy zamierzają wywiązać się z zawartych w nich ustaleń.

Pozwany twierdzi, że przedmiotowe aneksy są wynikiem porozumienia stron w zakresie spłaty zaległości powodów wobec pozwanego wynikających z umów na zarządzanie budynkami na kwotę ok. 1.500.000,00 zł. Pozwany przyznał, że gwarancje wynikające z treści aneksów miały faktycznie rekompensować pozwanemu ustępstwo na rzecz powodów w zakresie rezygnacji z przymusowego i natychmiastowego dochodzenia zaległości i odsetek oraz odroczenia ich płatności w czasie i częściowego umorzenia, co umożliwiło powodom zachowanie płynności finansowej i wypłacalność. Pozwany wskazuje, że rekompensując pozwanemu zwłokę w płatności ogromnej sumy z tytułu należycie wykonywanych przez niego umów o zarządzanie budynkami, powodowie zgodzili się zagwarantować pozwanemu ciągłość trwania tych umów w okresie od 2013 do 2020 roku.

Pozwany zaprzecza przy tym, jakoby Adam Świech zorganizował działalność kompleksu KBP w taki sposób, aby uzależnić jego prowadzenie od powiązanych z nim podmiotów, w tym pozwanego.

Pozwany podnosi, że zaległość powodów z tytułu zarządzania budynkami w 2011 roku wynosiła ok. 3.500.000,00 zł, przy czym pozwany zgodził się wówczas na umorzenie części tych należności. Z kolei zaległość z tytułu dostawy energii elektrycznej i zarządzania budynkami w 2013 roku wynosiła ok. 1.500.000,00 zł, wskutek czego zawarte zostały przedmiotowe aneksy.

Pozwany zarzuca niewykazanie przez powodowe Spółki tego, że nie były zadłużone, oraz że nie doszło do wydłużenia terminów płatności. Pozwany uznaje to za przyznanie przez powodów nieterminowych spłat zobowiązań z tytułu wykonywanych umów o zarządzanie budynkami i opłat za energię elektryczną.

Pozwany podnosi, że Bożena Sanecka pozostawała pełnoprawnym członkiem zarządu powodowych Spółek do dnia 21 maja 2013 roku, a więc przedmiotowe aneksy zostały zawarte przed datą odwołania jej z funkcji członka zarządu.

Pozwany zaprzeczył, by w celu zmuszenia powodów do zapłaty należności wynikających z aneksów, osoby działające na zlecenie pozwanego uszkodziły infrastrukturę należącą do pozwanego, by pozbawić powodowe Spółki dostaw prądu.

Pozwany wskazuje, że zawierając przedmiotowe aneksy działał w zaufaniu do ujawnionych w Krajowym Rejestrze sądowym wpisów potwierdzających uprawnienie Bożeny Saneckiej do ich reprezentowania. Zdaniem pozwanego, do uznania aneksów za sprzeczne z zasadami współżycia społecznego nie wystarczy stwierdzenie, że ich celem było

2

utrudnienie rozwiązania umów o zarządzanie, gdyż taki cel jest oczywisty
i całkowicie uznany przez prawo oraz zasady współżycia społecznego.

SĘDZIA
Sądu Okręgowego w Gdań.

*Mariusz Nowick*

3

### Zestaw pytań do świadka Bożeny Saneckiej

1. Czy była Pani C2łonkiem zarządu spółek KBP - 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o.?

2. Jeśli tak, to w jakim okresie czasu?

3. Czy w dacie sprawowania przez Panią funkcji członka zarządu spółek KBP — 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o. ktokolwiek kwestionował sposób Pani zatrudnienia?

4. Czy w dacie sprawowania przez Panią funkcji członka zarządu spółek KBP - 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o. ktokolwiek, w szczególności wspólnicy kwestionowali zasadność podejmowanych przez Panią decyzji i zaciągniętych zobowiązań?

5. Jakie czynności wykonywała Pani w ramach pełnienia funkcji członka zarządu ww. spółek?

6. Czy spółki były właścicielem jakichś nieruchomości?

7. Czy zarządzanie nieruchomościami ww. spółek zostało zlecone spółce Conection Sp. z o.o.?

8. Jaki był główny powód podpisania przez spółki KBP - 2 Sp. z o.o., KBP .— 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o. ze spółką Conection Sp. z o.o. aneksów do umów o zarządzanie?

9. W jakich datach zostały przez Panią podpisane aneksy do umów o zarządzanie ze spółką Conection Sp. z o.o.?

10. Czy w dniach 3 stycznia 2013 r. i 1 marca 2013 r. spółki KBP - 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o. posiadały w stosunku do Conection Sp. z o.o. zaległości finansowe wynikające z umów na zarządzanie budynkami?

11. Jeśli tak, na jaką kwotę opiewały zaległości spółek KBP - 2 Sp. •z o.o., KBP — 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o. w dniu podpisania aneksów?

12. Czy Conection Sp. z o.o. zrezygnowała z natychmiastowego 1 przymusowego dochodzenia zaległości finansowych od spółek KBP - 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP - 5 Sp. z 0.0., KBP - 6 Sp. z o.o.?

13. Czy spółka Conection Sp. z o.o. odroczyła płatność zaległości?

14. Jeśli tak, na jaki okres czasu?

15. Czy spółka Conection Sp. z o.o. częściowo umorzyła spółkom KBP - 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP — 5 Sp. z o.o., KBP — 6 Sp. z o.o. dług wynikający z umów o zarządzanie budynkami?

16. Czy w jakimkolwiek postępowaniu podważono skuteczność lub ważność aneksów podpisanych przez Panią w dniach 3 stycznia 2013 r. i l marca 2013 r.?

17. Czy w związku z pełnioną przez Panią funkcją i podejmowanymi czynnościami spółki KBP - 2 Sp. z 0.0., KBP - 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o. występowały z jakimikolwiek roszczeniami?

18. Czy zostały ogłoszone przeciwko Pani formalnoprawne zarzuty o nierzetelne reprezentowanie i prowadzenie spraw spółek KBP - 2 Sp. z o.o., KBP - 3 Sp. z o.o., KBP - 5 Sp. z o.o., KBP - 6 Sp. z o.o.?

Lista pytań do świadka Bożeny Saneckiej:

1. Czy jest Pani rodziną Adama Świecha ? Kim dla Pani jest Adam Świech ?

2. Czy zna Pani Dereka Lewickiego ?

3. Kim jest Derek Lewicki i skąd go Pani zna ?

4. Czy Derek Lewicki kontaktował się z Panią w roku 2013 ?

5. Czy wie Pani kto podjął decyzję o powołaniu Pani do zarządu KBP-2 sp. z o.o., KBP-3 sp. z o.o., KBP-5 sp. z o.o., KBP-6 sp. z o.o.?

6. Kto przedstawił Pani propozycję powołania do zarządu tych spółek i jak ją umotywował ?

7. Jakie czynności Pani wykonywała zasiadając w zarządzie spółek KBP-2 sp. z o.o., KBP-3 sp. z o.o., KBP-5 sp. z o.o., KBP-6 sp. z o.o.? Jakie były Pani obowiązki?

8. W treści oświadczenia z 16 lutego 2016 roku (affidavit) wskazała Pani, że została Pani powołana do zarządu ww. spółek, ponieważ *z tego, co rozumiałam, poproszono mnie o wejście do zarządów, ponieważ można było oczekiwać, że będę wypełniać polecenia bez zadawania pytań i bez sprzeciwu [...].* Czy to prawda?

9. Czym zajmowała się .Pani przed powołaniem Pani do zarządów spółek KBP-2 sp. z o.o., KBP-3 sp. z o.o., KBP-5 sp. z o.o., KBP-6 sp. z o.o. oraz innych spółek KBP ?

10. Jaki zawód wykonywała Pani przed powołaniem Pani do zarządów tych spółek ?

11. Czy przed powołaniem Pani do zarządu ww. spółek zajmowała się Pani zarządzaniem spółkami? Czy miała Pani jakieś doświadczenie w tym zakresie ?

12. Czy w czasie, gdy sprawowała Pani funkcję w zarządach spółek KBP-2 sp. z o.o., KBP-3 sp. z o.o., KBP-5 sp. z o.o., KBP-6 sp. z o.o. mieszkała Pani w Polsce ? Gdzie Pani wówczas mieszkała ?

13. W treści oświadczenia z 16 lutego 2016 roku (affidavit) wskazała Pani, że *w żadnym czasie podczas mojej kadencji ww. zarządach podmiotów KBP nie negocjowałam jakichkolwiek umów dla któregokolwiek podmiotów KBP ani nie ogrywałam żadnej innej czynnej roli w zarządzaniu nimi lub prowadzeniu ich spraw. Jedynym zadaniem, jakie wykonywałam, było podpisywanie dokumentów [...].* Czy to prawda?

14. Czy podpisywała Pani następujące dokumenty:

   (i) aneks do umowy z 18 grudnia 2006 roku na zarządzanie budynkiem KBP-200, zawarty pomiędzy KBP-2 sp. z o.o. a Conection sp. z o.o., datowany na 3 stycznia 2013 roku;

(ii) aneks do umowy z 8 maja 2006 roku na zarządzanie budynkiem KBP-400, zawarty pomiędzy KBP-3 sp. z o.o. a Conection sp. z o.o., datowany na 3 stycznia 2013 roku;

(iii) aneks do umowy z 30 kwietnia 2009 roku na zarządzanie budynkiem KBP-800, zawarty pomiędzy KBP-5 sp. z o.o. a Conection sp. z o.o., datowany na 1 marca 2013 roku;

(iv) aneks do umowy z 30 kwietnia 2009 roku na zarządzanie budynkiem KBP-1000, zawarty pomiędzy KBP-6 sp. z o.o. a Conection sp. z o.o., datowany na 1 marca 2013 roku?

15. Dlaczego w swoim oświadczeniu (affidavit) z 16 lutego 2016 roku wskazała Pani, że dwa spośród powyższych aneksów mogła Pani podpisać w dacie innej niż widnieje na dokumencie?

16. W treści Pani oświadczenia (affidavit) z 16 lutego 2016 roku wskazała Pani, że: *Daty, w których podpisywałam dokumenty, różniły się od dat wpisanych pismem maszynowym na dokumentach. Jakkolwiek nie przypominam sobie dat, w których faktycznie podpisywałam poszczególne dokumenty, w tym dokumenty dołączone jako Załączniki 1-23* [w tym dwa spośród wskazanych powyżej aneksów do umów o zarządzenie - przyp. pełnomocnika powodów], *to wiele dokumentów podpisałam po dniu 11 kwietnia 2013 roku, a inne po 20 maja 2013 roku. Czy* może Pani wyjaśnić, jaki był cel podpisywania dokumentów w innej dacie niż widniała na dokumencie?

17. Jak wyglądało podpisywanie przez Panią dokumentów w imieniu spółek KBP-2 sp. z o.o., KBP-3 sp. z o.o., KBP-5 sp. z o.o., KBP-6 sp. z o.o. podczas gdy mieszkała Pani w USA?

18. Czy samodzielnie sporządzała Pani dokumenty, które następnie Pani podpisywała (umowy, aneksy, oświadczenia, weksle etc.)?

19. Od kogo otrzymywała Pani te dokumenty?

20. Czy Derek Lewicki przekazywał Pani jakieś dokumenty do podpisu? Jakie to były dokumenty?

21. Czy wie Pani, kto przygotowywał projekty tych dokumentów?

22. Czy wprowadzała Pani jakieś zmiany do projektów tych dokumentów?

23. Czy kontaktowała się Pani z notariusz Cathleen M. Meegan w sprawie notarialnego poświadczania dokumentów (notaryzowania)?

24. Skąd znała Pani notariusz Cathleen M. Meegan?

25. W jakich pozostawały Panie relacjach?

26. Czy notariusz Cathleen M. Meegan wskazywała na poświadczanych dokumentach datę odpowiadającą rzeczywistej dacie ich poświadczenia? Czy podawała też inne daty?

27. Czy prosiła Pani notariusz Cathleen M. Megan, żeby wskazywała jako datę poświadczenia podpisu inną datę niż rzeczywista data, w której dokumenty były poświadczane?

28. Dlaczego w treści oświadczenia z 16 lutego 2016 roku (affidavit) wskazała Pani, że: *Na moją prośbę, p.  Meegan umieszczała na swoich poświadczeniach notarialnych daty zgodnie z datami wpisanymi maszynowo na dokumentach zamiast dat,  w których je faktycznie podpisywałam. Dokumenty nie były podpisywane w datach widniejących na poświadczeniach wystawionych przez p. Meegan [...]*? Czy to prawda?

29. Czy znany jest Pani cel podpisania aneksów do umów o zarządzanie?

30. Dlaczego aneksy przedłużały obowiązywanie umów o zarządzanie do 2020 roku?

31 Dlaczego w aneksach zastrzeżono możliwość odłączenia prądu do budynków biurowych KBP-2 sp. z 0.0., KBP-3 sp. z o.o., KBP-5 sp. z ó.o. i KBP-6 sp. z o.o.?

32. Dlaczego w aneksach zastrzeżono rekompensatę na wypadek wypowiedzenia umów o zarządzanie ? Jaki był tego cel?

33. Czy wie Pani, jakie było zadłużenie spółek KBP-2 sp. z o.o., KBP-3 sp. z o.o., KBP-5 sp. z o.o. i KBP-6 sp. z o.o. wobec Conection sp. z o.o. na dzień 3 stycznia 2013 roku i 3 marca 2013 roku (daty widniejące na aneksach) ?

34. Dlaczego w aneksach zawartych przez KBP-2 sp. z o.o. i KBP-3 sp. z o.o. z Conection sp. z o.o. nie jest podana wysokość zadłużenia tych spółek wobec Conection sp. z o.o.?

35. Dlaczego w aneksach zawartych przez KBP-5 sp. z o.o. i KBP-6 sp. z o.o. z Conection sp. z o.o. jest podana nieaktualna wysokość zadłużenia tych spółek wobec Conection sp. z o.o.?

Lista pytań do świadka Cathleen M. Meegan

1.  Czy zna Pani Bożenę Sanecką ?

2.  Skąd ją Pani zna ?

3.  W jakich relacjach Panie pozostawały ?

4.  Czy nadal utrzymują Panie kontakty ?

5.  Czy na prośbę Bożeny Saneckiej poświadczała Pani jakieś dokumenty ?

6.  Czy pamięta Pani jakie to były dokumenty?

7.  Czy Bożena Sanecką wyjaśniała Pani co to za dokumenty i czemu miały służyć ?

8.  Czy daty wskazywane przez Panią w treści notarialnych poświadczeń odpowiadały rzeczywistym datom poświadczenia ?

9.  Czy Bożena Sanecka prosiła Panią o umieszczanie na poświadczeniu notarialnym innej daty niż rzeczywista data okazania Pani dokumentu?

10. W treści swoich zeznań złożonych w dniu 2 lipca 2018 roku, w postępowaniu karnym przed Prokuraturą Okręgową w Krakowie, sygn. PK IV WZ Ds. 19.2018 wskazała Pani, że: *Tak, podtrzymuję moją wypowiedź zawartą w punkcie piątym* [oświadczenia z 22 sierpnia 2016 roku złożonego w sprawie 08 CV 4922 - przypis pełnomocnika powodów], *że gdy Bożena Sanecka prosiła mnie o notaryzację dokumentu z datą, jaka jest wpisana maszynowo na górze dokumentu. To ja notaryzowałam ten dokument z taką datą niezależnie od tego kiedy dokument był podpisywany. Nie pamiętam jednak czy Bożena prosiła mnie o to za każdym razem. Jednakże gdy mnie o to poprosiła, ja spełniałam jej prośbę* [...] Czy w dalszym ciągu podtrzymuje Pani, że na prośbę Bożeny Saneckiej umieszczała Pani w treści notarialnego poświadczenia datę inną niż rzeczywista data dokonania poświadczenia?

### Zestaw pytań do świadka Cathleen M. Megan

1. Jaki zawód Pani wykonuje?
2. Czy w roku 2013 wykonywała Pani zawód Notariusza Publicznego Stanu Illinois w USA?
3. Czy zna Pani Panią Bożenę Sanecką?
4. Czy świadczyła Pani usługi lub wykonywała czynności dla Pani Bożeny Saneckiej?
5. Jeśli tak, to kiedy miały one miejsce i czego dotyczyły?
6. Czy dokonywała Pani w roku 2013, jako Notariusz Publiczny Stanu Illinois w USA poświadczenia podpisów na dokumentach na prośbę Pani Bożeny Saneckiej?
7. Jeśli tak, to czy pamięta Pani jakie to były dokumenty?
8. Czy pamięta Pani co było w treści tych dokumentów?
9. Jeśli tak, to czy może Pani opisać te dokumenty w sposób szczegółowy?
10. Jaka jest procedura poświadczania podpisu na dokumencie w USA?
11. Czy istnieje akt prawny, który reguluje procedurę poświadczania podpisu na dokumencie?
12. Jaką część dokumentu obejmuje notaryzacja?
13. Czy Notariusz zapoznaje się z treścią dokumentu, którego podpis poświadcza?
14. Czy Pani zdaniem w poświadczaniu podpisów na dokumentach na prośbę Pani Bożeny Saneckiej występowały jakieś nieprawidłowości?
15. Czy jest Pani wiadome, by w jakimkolwiek postępowaniu sądowym zostało przesądzone, że dokumenty dla Pani Bożeny Saneckiej zostały przez Panią notaryzowane w sposób niewłaściwy?

EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

IN RE: REQUEST FOR JUDICIAL         CASE NO.
ASSISTANCE FROM THE REGIONAL
COURT IN GDANSK, POLAND IN
THE MATTER OF KBP, ET AL. V.
CONECTION SPOLKA
_____/

### COMMISSIONER'S SUBPOENA

To:     Bozena Sanecka
       4532 North Nottingham Ave.
       Apt. 1
       Norridge, IL 60607

I, Krysta M. Stanford, a Trial Attorney for the U.S. Department of Justice, Civil Division,

Office of Foreign Litigation, Office of International Judicial Assistance, acting under the

authority of Title 28, United States Code, Section 1782, for the purpose of rendering assistance

to Poland, command that you provide to me evidence for use in a civil lawsuit in the Regional

Court in Gdansk, Poland, entitled *KBP, et al. v. Conection Spolka,* Foreign Reference Number

IX GC 164/20, said evidence being:

To provide the completed affidavit in response to the Polish Court's 53 interrogatories

(see Attachment A) by email to me at Krysta.M.Stanford@usdoj.gov or by mail at the address

set forth below no later than _____ (date).

**Krysta M. Stanford**
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Foreign Litigation
Office of International Judicial Assistance
1100 L Street, NW, Room 8024
Washington, D.C. 20530

For failure to provide said evidence, you may be deemed guilty of contempt and liable to

penalties under the law. The recipient of the attached subpoena may, for good cause shown,

oppose the giving of evidence, or the circumstances thereof, by motion timely filed with the

Court.

  If you have any questions regarding the contents of this request or the methods by which

you may comply with the subpoena, please contact me by phone at (202) 353-2148 or by email

at Krysta.M.Stanford@usdoj.gov.


  Dated this _____ day of _____, 2021.


_____

KRYSTA M. STANFORD, Commissioner
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Foreign Litigation
Office of International Judicial Assistance
1100 L Street, NW
Room 8024
Washington, D.C. 20530
Telephone: 202-353-2148
Email: Krysta.M.Stanford@usdoj.gov

ATTACHMENT A

U.S. DEPARTMENT OF JUSTICE
OFFICE OF INTERNATIONAL JUDICIAL
ASSISTANCE

------------------------------------------------------x

IN RE:                                          :
                                                :
LETTER OF REQUEST FROM THE      :        Ref No.: IX GC 164/20
REGIONAL COURT IN GDAŃSK,       :
POLAND IN THE MATTER OF KBP, ET :        DJ No.: 189-43-21-27
AL. v. CONECTION SPÓŁKA          :

------------------------------------------------------x

## EXECUTION AFFIDAVIT OF LETTER OF REQUEST

  I, Bożena Sanecka, a citizen of _____(country),

born on_____, in _____(city, state or

country), presently residing at_____ (address),

state under oath:

  I have been furnished by the U.S. Department of Justice, Office of International Judicial

Assistance, with a copy of the above captioned Letter of Request, issued pursuant to the Hague

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, requesting that I

answer written interrogatories relating to a civil case captioned KBP, et.al. v. Conection Spóllka

and pending before the Regional Court in Gdańsk, Poland.

  The following are my responses to the questions contained in the Letter of Request.

These responses are based upon personal knowledge.

<u>SET 1 – INTERROGATORIES to Bożena Sanecka</u>

<u>INTERROGATORY 1</u>: Have you ever sat on the management boards of the following companies: KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.?

<u>ANSWER</u>:


<u>INTERROGATORY 2</u>: If so, over what period of time?

<u>ANSWER</u>:


<u>INTERROGATORY 3</u>: Did anyone challenge your employment contract at the time you held the function of a member of the management board of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

<u>ANSWER</u>:


<u>INTERROGATORY 4</u>: Did anyone, the shareholders in particular, challenge reasonableness of the decisions you made and the obligations you assumed at the time you held the function of a member of the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

<u>ANSWER</u>:


<u>INTERROGATORY 5</u>: What were your duties as a member of the management boards of the above-listed companies?

<u>ANSWER</u>:


<u>INTERROGATORY 6</u>: Did the companies own any real estate?

<u>ANSWER</u>:

2

INTERROGATORY 7: Was management of the real estates owned by the said companies entrusted to Conection Sp. z o.o.?

ANSWER:

INTERROGATORY 8: What was the main cause of the signing of the annexes to the management contracts with Conection Sp. z o.o., KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

ANSWER:

INTERROGATORY 9: On what dates did you sign the annexes to the management contracts with Conection Sp. z o.o.?

ANSWER:

INTERROGATORY 10: Was there, on January 3, 2013 and March 1, 2013, any overdue debt of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o under the building management contracts?

ANSWER:

INTERROGATORY 11: If so, what was the amount of the overdue debt of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o on the date the annexes were signed?

ANSWER:

INTERROGATORY 12: Did Conection Sp. z o.o. waive immediate forced enforcement of the debt from KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

ANSWER:

INTERROGATORY 13: Did Conection Sp. z o.o. defer the payment of the overdue debt?

ANSWER:


INTERROGATORY 14: If so, for how long?

ANSWER:


INTERROGATORY 15: Did Conection Sp. z o.o. cancel a part of the debt owing under the building management contracts from KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

ANSWER:


INTERROGATORY 16: Has the effectiveness or validity of the annexes you signed on January 3, 2013 and March 1, 2013 ever been questioned in any proceedings?

ANSWER:


INTERROGATORY 17: Have KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o ever raised any claims against you in connection with the function you held and the actions you took?

ANSWER:


INTERROGATORY 18: Have any legal charges ever been formally raised against you alleging you dishonest representation of and dealing with the matters of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

ANSWER:

<u>SET 2 – INTERROGATORIES to Bożena Sanecka</u>

<u>INTERROGATORY 1</u>: Are you a member of Adam Świech's family? Who are you for Adam Świech?

<u>ANSWER</u>:


<u>INTERROGATORY 2</u>: Do you know Derek Lewicki?

<u>ANSWER</u>:


<u>INTERROGATORY 3</u>: Who is Derek Lewicki and how did you meet him?

<u>ANSWER</u>:


<u>INTERROGATORY 4</u>: Did Derek Lewicki contact you in 2013?

<u>ANSWER</u>:


<u>INTERROGATORY 5</u>: Do you know who made the decision to appoint you a member of the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o?

<u>ANSWER</u>:


<u>INTERROGATORY 6</u>: Who put forward the proposal of appointing you member of the companies' management boards and how did he/she substantiate it?

<u>ANSWER</u>:

<u>INTERROGATORY 7</u>: What did you do on the management board of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o? What was the scope of your duties?

<u>ANSWER</u>:


<u>INTERROGATORY 8</u>: In your affidavit of February 16, 2016, you stated that you had been appointed member of the management boards of the above companies because, *as I understood it, I was asked to sit on the management boards since once could anticipate I would be obeying orders without asking questions or raising objections [...]*. Is that true?

<u>ANSWER</u>:


<u>INTERROGATORY 9</u>: What did you do before your appointment to the management board of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o., and other KBP companies?

<u>ANSWER</u>:


<u>INTERROGATORY 10</u>: What was your occupation before your appointment to the management boards of the above companies?

<u>ANSWER</u>:


<u>INTERROGATORY 11</u>: Had you dealt with managing companies before you were appointed a management board member of the said companies? Did you have any experience in this respect?

<u>ANSWER</u>:


<u>INTERROGATORY 12</u>: Did you live in Poland over the time you sat on the management boards of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o.? Where did you live at the time?

<u>ANSWER</u>:

INTERROGATORY 13: In your affidavit of February 16, 2016, you stated that *at no time over my term of office on the management boards of the KBP entities did I negotiate any contracts for any of the KBP entities, nor did I play any other active role in the management of the companies or management of their affairs. The sole duty I performed consisted in signing documents [...]*. Is this true?

ANSWER:


INTERROGATORY 14: Did you sign the following documents:

i.   Annexe to the contract of December 18, 2006, on the management of the KBP-200 building, signed by and between KBP-2 sp. z o.o. and Conection sp. z o.o., dated January 3, 2013?

   ANSWER:


ii.  Annexe to the contract of May 8, 2006 on the management of the KBP-400 building, signed by and between KBP-3 sp. z o.o. and Conection sp. z o.o. dated January 3, 2013?

   ANSWER:


iii. Annexe to the contract of April 30, 2009, on the management of the KBP-800 building, signed by and between KBP-5 sp. z 0o.o. and Conection sp. z o.o., dated March 1, 2013?

   ANSWER:


iv.  Annexe to the contract of April 30, 2009, on the management of the KBP-1000 building, signed by and between KBP-6 sp. z o.o. and Conection sp. z o.o., dated March 1, 2013?

   ANSWER:


INTERROGATORY 15: Why, in your affidavit of February 16, 2016, did you indicate that you might have signed two of the above annexes on dates other than those stated in the documents?

ANSWER:

INTERROGATORY 16: In your affidavit of February 16, 2016, you stated that: *The dates on which I signed documents were different from the dates printed thereon. Although I cannot remember the dates on which I actually signed individual documents, including those enclosed as Exhibits 1-23* [including two of the above-listed annexes to the management contracts - note from the Claimants' attorney], *I signed many of them later than on April 11, 2013, otherwise after May 20 2013.* Can you explain what the purpose of signing the documents on dates other than shown on the documents was?

ANSWER:


INTERROGATORY 17: What was the procedure of your signing documents in the name of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. considering you yourself lived in the USA?

ANSWER:


INTERROGATORY 18: Did you yourself produce the documents you then signed (contracts, annexes, declarations, bills of exchange, etc.)?

ANSWER:


INTERROGATORY 19: Who did you receive the documents from?

ANSWER:


INTERROGATORY 20: Did Derek Lewicki forward any documents to be signed to you? What were the documents?

ANSWER:


INTERROGATORY 21: Do you know who drafted the documents?

ANSWER:

INTERROGATORY 22: Did you amend the draft documents in any way?

ANSWER:


INTERROGATORY 23: Did you contact Cathleen M. Meegan, Notary Public, to notarize the documents?

ANSWER:


INTERROGATORY 24: How did you meet Cathleen M. Meegan, Notary Public?

ANSWER:


INTERROGATORY 25: What were the relationships between you?

ANSWER:


INTERROGATORY 26: Did Cathleen M. Meegan, Notary Public, put the actual notarization date on the documents she authenticated? Or would she, perhaps, also give other dates?

ANSWER:


INTERROGATORY 27: Did you ask Cathleen M. Meegan, Notary Public, to indicate the notarization date that would be different from the date on which the documents were actually notarized?

ANSWER:


INTERROGATORY 28: Why, in your affidavit of February 16, did you state that: *On my request, Ms. Meegan Would date her notarizations consistent with the dates printed on the documents instead of the dates on which I actually signed them. The documents were not signed on the date shown on the notarizations by Ms. Meegan* […]? Is this true?

ANSWER:

INTERROGATORY 29: Are you aware of the purpose of signing the annexes to the management contracts?

ANSWER:


INTERROGATORY 30: Why did the annexes extend the management contract validity terms until the year 2020?

ANSWER:


INTERROGATORY 31: Why did the annexes provide for the option of disconnecting the office buildings of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. from power supply?

ANSWER:


INTERROGATORY 32: Why did the annexes provide for compensation, should the management contracts the terminated? What was the purpose of the stipulations?

ANSWER:


INTERROGATORY 33: Do you know what the debt of KBP-2 Sp. z o.o., KBP-3 Sp. z o.o., KBP-5 Sp. z o.o., and KBP-6 Sp. z o.o. to Conection sp. z o.o. was at January 3, 2013 and March 3, 2013 (the dates shown on the annexes)?

ANSWER:


INTERROGATORY 34: Why do the annexes concluded by KBP-2 sp. z o.o. and KBP-3 sp. z o.o. with Conection sp. z o.o. not state the amount of the companies' debt to Conection sp. z o.o.?

ANSWER:

<u>INTERROGATORY 35</u>: Why do the annexes concluded by KBP-5 sp. z o.o. and KBP-6 sp. z o.o. with Conection sp. z o.o. state untrue amount of the companies' debt to Conection sp. z o.o.?

<u>ANSWER</u>:

The foregoing answers are true and correct to the best of my knowledge and belief.

Dated: _____, _____ (City, State)

_____ _____, _____ (Date)

_____
Signature

_____
Print Name

EXHIBIT C-1



JEDavidson:kms:mtr

**U.S. Department of Justice**
Civil Division
Office of International Judicial Assistance

_____

*U.S. Central Authority*
*Benjamin Franklin Station*
*P.O. Box 14360*
*Washington, DC 20044*
*+1 (202) 514-6700*
*OIJA@usdoj.gov*

April 27, 2021

**BY FEDEX**
Bożena Sanecka
4532 North Nottingham Ave.
Norridge, IL 60607

Re: Request for International Judicial Assistance from the Regional Court in Gdańsk,
Poland in <u>KBP, et.al. v. Conection Spółka,</u> Ref No.: IX GC 164/20
DJ Reference Number: 189-43-21-27

Dear Ms. Sanecka:

The Office of International Judicial Assistance, within the U.S. Department of Justice
Civil Division, serves as the U.S. Central Authority for the Hague Convention on the Taking of
Evidence Abroad in Civil or Commercial Matters. 28 C.F.R. § 0.49. Pursuant to that Convention,
we received a Letter of Request seeking evidence in a civil matter pending in the Regional Court
in Gdańsk, Poland ("Polish Court").

In its Request, the Polish Court requested we obtain evidence, in the form of testimony,
from you in response to a civil lawsuit filed by KBP, et.al. I am hopeful you will provide the
answers voluntarily by completing the enclosed form, entitled "Execution Affidavit of Letter of
Request," which sets forth the questions as worded in the attached translation of the Letter of
Request. **After completing the affidavit, please return it by email to <u>OIJA@usdoj.gov</u> no
later than May 21, 2021.** If you are unable to send the affidavit electronically, it may be sent by
mail, preferably by Federal Express, to the following address:

Krysta M. Stanford
Trial Attorney, U.S. Department of Justice
Office of International Judicial Assistance
1100 L Street, NW, Room 8024
Washington, D.C. 20005

I anticipate that the questions that are the subject of this Request may be answered with
little inconvenience to you. Please note, however, that if you are unwilling to comply voluntarily,
this Office may request that the United States District Court for the Northern District of Illinois
compel you to answer the questions, subject to your right to assert any applicable testimonial
privileges. <u>See</u> 28 U.S.C. § 1782.

Please confirm receipt of this Request and your intention to comply voluntarily by calling (202) 353-2148 or by email at OIJA@usdoj.gov. **Please also contact us if you would like us to email you a copy of the affidavit so you can type in your answers.** Do not hesitate to contact our office if you have any questions. Thank you in advance for your cooperation and assistance in this matter.

Very truly yours,

JEANNE E. DAVIDSON
Director

By:

KRYSTA M. STANFORD
Trial Attorney

Enclosures:
    (1) Letter of Request
    (2) Execution Affidavit of Letter of Request

FedEx

May 03, 2021

Dear Customer,

The following is the proof-of-delivery for tracking number: 816234293659

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Apartment Office |
| **Signed for by:** | R.SANCKS | **Delivery Location:** | |
| **Service type:** | FedEx Standard Overnight | | |
| **Special Handling:** | Deliver Weekday; Residential Delivery; Direct Signature Required | | IL, |
| | | **Delivery date:** | Apr 29, 2021 12:28 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 816234293659 | **Ship Date:** | Apr 27, 2021 |
| | | **Weight:** | |
| **Recipient:** | | **Shipper:** | |
| IL, US, | | WASHINGTON, DC, US, | |

Signature image is available. In order to view image and detailed information, the shipper or payor account
number of the shipment must be provided.

Thank you for choosing FedEx

EXHIBIT C-2



JEDavidson:smw

**U.S. Department of Justice**
Civil Division
Office of International Judicial Assistance

_____

*U.S. Central Authority*
*Benjamin Franklin Station*
*P.O. Box 14360*
*Washington, DC 20044*
*+1 (202) 514-6700*
*OIJA@usdoj.gov*

June 3, 2021

**<u>BY FEDERAL EXPRESS</u>**
Bożena Sanecka
4532 North Nottingham Ave.
Norridge, IL 60607

Re:     Request for International Judicial Assistance from the Regional Court in Gdańsk,
        Poland in <u>KBP, et.al. v. Conection Spółlka,</u> Ref No.: IX GC 164/20
        DJ Reference Number: 189-43-21-27

Dear Ms. Sanecka:

        The Office of International Judicial Assistance, within the U.S. Department of Justice
Civil Division, serves as the U.S. Central Authority for the Hague Convention on the Taking of
Evidence Abroad in Civil or Commercial Matters. 28 C.F.R. § 0.49. Our office has already been
in contact with you by a letter regarding a Letter of Request seeking evidence in a civil matter
pending in the Regional Court in Gdańsk, Poland ("Polish Court"). That Request is once again
provided to you with this letter, including the questions from the Polish Court that require your
prompt response.

        In its Request, the Polish Court requested we obtain evidence, in the form of testimony,
from you in response to a civil lawsuit filed KBP, et al. I am hopeful that you will provide the
answers voluntarily by completing the enclosed form, entitled "Execution Affidavit of Letter of
Request," which sets forth the questions as worded in the attached translation of the Letter of
Request. **After completing the affidavit, please return it by email to <u>OIJA@usdoj.gov</u> no
later than June 25, 2021.** If you are unable to send the affidavit electronically, it may be sent by
mail, preferably by Federal Express, to the following address:

Krysta M. Stanford
Trial Attorney, U.S. Department of Justice
Office of International Judicial Assistance
1100 L Street, NW, Room 8024
Washington, D.C. 20005

        Our office is contacting you for the second time to seek your voluntary cooperation with
this Request. If you are unwilling to comply voluntarily, or if you do not reply to this letter by
June 25, 2021, our office will seek a court order from the United States District Court for the
Northern District of Illinois to compel your testimony pursuant to 28 U.S.C. § 1782.

Please confirm receipt of this Request and your intention to comply voluntarily by calling (202) 353-2148 or by email at OIJA@usdoj.gov. **Please also contact us if you would like us to email you a copy of the affidavit so you can type in your answers.** Do not hesitate to contact our office if you have any questions. Thank you in advance for your cooperation and assistance in this matter.

Very truly yours,

JEANNE E. DAVIDSON
Director

By:

KRYSTA M. STANFORD
Trial Attorney

Enclosures:
    (1) Letter of Request
    (2) Execution Affidavit of Letter of Request

June 10, 2021

Dear Customer,

The following is the proof-of-delivery for tracking number: 816234294482

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Residence |
| **Signed for by:** | Signature not required | **Delivery Location:** | |
| **Service type:** | FedEx Standard Overnight | | |
| **Special Handling:** | Deliver Weekday; Residential Delivery | | IL, |
| | | **Delivery date:** | Jun 7, 2021 12:32 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 816234294482 | **Ship Date:** | Jun 3, 2021 |
| | | **Weight:** | |
| **Recipient:** | | **Shipper:** | |
| IL, US, | | WASHINGTON, DC, US, | |

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment

because a signature was not required.

Thank you for choosing FedEx

EXHIBIT C-3



**U.S. Department of Justice**
Civil Division
Office of International Judicial Assistance

JEDavidson:smw:kms

_____

*U.S. Central Authority*
*Benjamin Franklin Station*
*P.O. Box 14360*
*Washington, DC 20044*
*+1 (202) 514-6700*
*OIJA@usdoj.gov*

July 6, 2021

**BY FEDERAL EXPRESS**
Bożena Sanecka
4532 North Nottingham Ave. Apt. 1
Norridge, IL 60607

    Re:    Request for International Judicial Assistance from the Regional Court in Gdańsk,
             Poland in <u>KBP, et.al. v. Conection Spółka,</u> Ref No.: IX GC 164/20
             DJ Reference Number: 189-43-21-27

Dear Ms. Sanecka;

        Our office has made repeated attempts to acquire your response to the above-captioned Request. This is the final request our office will make for your voluntary cooperation.

        In its Request, the Polish Court requested we obtain evidence, in the form of testimony, from you in response to a civil lawsuit filed by KBP and others. I am hopeful that you will provide the answers voluntarily by completing the enclosed form, entitled "Execution Affidavit of Letter of Request," which sets forth the questions as worded in the attached translation of the Letter of Request. **After completing the affidavit, please return it by email to OIJA@usdoj.gov no later than July 30, 2021.** If you are unable to send the affidavit electronically, it may be sent by mail, preferably by Federal Express, to the following address:

                         Krysta M. Stanford
             Trial Attorney, U.S. Department of Justice
        Office of International Judicial Assistance
            1100 L Street, NW, Room 8024
              Washington, D.C. 20005

        Our office is contacting you for the third and final time to seek your voluntary cooperation with this Request. If you are unwilling to comply voluntarily, or if you do not reply to this letter by July 30, 2021, our office will seek a court order from the United States District Court for the Northern District of Illinois to compel your testimony pursuant to 28 U.S.C. § 1782.

        Please confirm receipt of this Request and your intention to comply voluntarily by calling (202) 353-2148 or by email at OIJA@usdoj.gov. **Please also contact us if you would like us to email you a copy of the affidavit so you can type in your answers.** Do not hesitate to contact

our office if you have any questions. Thank you in advance for your cooperation and assistance in this matter.

Very truly yours,

JEANNE E. DAVIDSON
Director

By:

KRYSTA M. STANFORD
Trial Attorney


Enclosures:
    (1) Letter of Request
    (2) Execution Affidavit of Letter of Request

July 12, 2021

Dear Customer,

The following is the proof-of-delivery for tracking number: 816234295695

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | M.SANECKA | Delivery Location: | |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday; Residential Delivery; Direct Signature Required | | IL, |
| | | Delivery date: | Jul 7, 2021 16:04 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 816234295695 | Ship Date: | Jul 6, 2021 |
| | | Weight: | |

| Recipient: | Shipper: |
|---|---|
| IL, US, | WASHINGTON, DC, US, |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

Thank you for choosing FedEx